## RICHARDSON, et al. *v.* CORTNER

No. 40696          March 3, 1958          100 So. 2d 855

*W. A. Temple,* Meridian, for appellant.

*Thomas K. Holyfield,* Meridian, for appellee.

GILLESPIE, J.

The decisive question in this case is whether the transaction involved is tainted with usury.

Finance and Collection Service, Inc., whose stock, except for a few shares, is owned by George V. Cortner,

operates under two trade names, one of which is Southern Loan Service. Southern Loan Service "arranges" small loans. According to the testimony of George V. Cortner, who, in his capacity as trustee, is the appellee, and the manager of Southern Loan Service, the loan to appellant, Clara Richardson, is fairly typical of the manner in which other loans are made through the facilities of Southern Loan Service. On December 17, 1954, appellant went to the office of Southern Loan Service in Meridian and requested a loan of $25.00. She signed an application requesting Southern Loan Service to obtain for her a loan from some person willing to lend her $25.-00, and included certain information about her earnings, credit and other data. Appellant was then told that Southern Loan Service would charge a brokerage of $13.-00 if the loan was arranged. Appellant was instructed to return to the office in a few hours. The manager of Southern Loan Service then inspected the household furniture, the proposed security for the loan. When appellant returned to the Southern Loan Service office, she signed a "brokerage contract" appointing Southern Loan Service her agent to negotiate for her a loan of $38.00 through any available channel, and agreed to pay Southern Loan Service a brokerage fee of $13.00 for services and to cover charge for guaranteeing her note to the lender. At the same time, appellant signed a note payable to Cortner and Ragland for $38.40, due in twelve weekly installments of $3.20 each, and a chattel deed of trust to George V. Cortner, Trustee for Finance and Collection Service, Inc., to save harmless and secure Finance and Collection Service, Inc., from any loss by reason of the latter's unconditional endorsement of the note executed by appellant to Cortner and Ragland, and conveying to the trustee certain household furniture described therein. Appellant then endorsed a check drawn on Cortner and Ragland for $38.00, payable to her, and this check was cashed by Southern Loan Service from its funds, the $13.00 brokerage fee was retained by Southern Loan

Service, and $25.00 delivered to appellant. In the interim of a few hours intervening between the signing of the application and the signing of the papers just mentioned, the manager of Southern Loan Service had inspected the household furniture, passed on the credit of appellant, caused to be prepared the loan papers, writen the check for $38.00 on the account of Cortner and Ragland, and sent the check a short distance away to be signed by Scott Hubert, attorney in fact for Cortner and Ragland. Southern Loan Service endorsed the note and fully guaranteed it, and delivered it to Scott Hubert.

The firm of Cortner and Ragland is composed of George V. Cortner's brothers and sister, all non-residents of the State, whose funds are kept in a Meridian bank subject to withdrawal on the signature of Scott Hubert, their attorney-in-fact. Hubert was auditor for George V. Cortner and his several businesses, including Southern Loan Service. The only gain to Cortner and Ragland from appellant's loan was the 40¢ interest included in the note. The check book of Cortner and Ragland was kept in the office of Southern Loan Service. Southern Loan Service made no loan for anyone other than Cortner and Ragland, and no one other than Scott Hubert did anything in behalf of Cortner and Ragland in connection with making a loan. Hubert never refused to sign a loan check prepared by Southern Loan Service, and he never turned down any loan arranged by them. All payments on notes were made to Southern Loan Service and the funds were deposited by the latter in the local bank account of Cortner and Ragland. Any time a note became three payments in arrears, Southern Loan Service paid Cortner and Ragland the balance due and took over the note. No act was done by Cortner and Ragland in connection with a loan except that Scott Hubert kept the note and was available to sign the loan checks when Southern Loan Service presented it. When Hubert would leave town he would leave signed blank checks for

use by Southern Loan Service in making small loans while he was away.

If the $13.00 "brokerage" is in fact interest, it would amount to 232% in addition to the 40¢ included in the note.

Appellant made only one payment and on January 31, 1955, Southern Loan Service paid off the note under its endorsement, and George V. Cortner, trustee, filed suit in replevin to obtain possession of the household furniture described in the deed of trust. Cortner, trustee, prevailed in the county and circuit courts, and Clara Richardson appealed to this Court.

■■ ■ If Southern Loan Service was a bona fide broker in arranging the loan for appellant, its brokerage fee is not to be considered as interest and the note was not usurious. If, as appellant contends, the arrangements between Southern Loan Service and Cortner and Ragland was a subterfuge to circumvent the usury laws, the entire transaction is illegal and the deed of trust is void. Jones v. Lamensdorf, 175 Miss. 565, 167 So. 624.

■■ ■ Looking through the form of the transaction, we find the substance to be something quite different from what the form pretends. Cortner and Ragland did not actually lend the money on the credit of appellant, but on the unconditional endorsement of Southern Loan Service. Cortner and Ragland did not pass upon the loan to appellant, or upon other similar loans made by Southern Loan Service. The actual business of making loans was being conducted by Southern Loan Service, and the sole part played by Cortner and Ragland was to make available to Southern Loan Service the funds needed by the later to lend to its customers. The evidence conclusively shows that Southern Loan Service was not in fact a broker, but the lender. The application, "brokerage" contract, and the arrangement between Southern Loan Service and the firm of Cortner and Ragland were devices to circumvent the laws against usury.

The public policy of the State condemns usury and the statute provides for the forfeiture of principal and interest if a rate in excess of 20% is contracted for or received. Sec. 36, Code of 1942. The authorities generally hold that courts will look to and construe the transaction by its substance and effect, rather than its form, and will permit no scheme or device, however ingenuous, to hide the face of usury. 91 C. J. S., Usury, Sec. 11, p. 582; Bailey v. Alt, 211 Miss. 547, 52 So. 2d 283.

Appellant was entitled to a peremptory instruction. This disposes of the case. Other assignments need not be considered.

Reversed and judgment here for appellant.

*Roberds, P. J.,* and *Hall, Lee* and *Kyle, JJ.,* concur.

## ON MOTION

Upon reversal of the case of Clara Richardson vs. George V. Cortner, Trustee, 100 So. 2d 854, judgment for costs was entered against "George V. Cortner, Trustee". Someone must be responsible for costs. When a party brings, or allows to be brought, a suit in his name in such representative capacity (trustee in a chattel deed of trust, he is individually liable for costs, insofar as the opposite party and the officers of the court are concerned.

The motion to retax the costs and order execution to issue was not filed within sixty days as required by Rule 19, Revised Rules of the Supreme Court. We suspend Rule 19 under Rule 33, it manifestly appearing that to do otherwise would result in injustice.

Motion to retax costs against George V. Cortner and order execution sustained, and execution for costs to issue if costs not paid within fifteen days.

*Roberds, P. J.,* and *Hall, Arrington* and *Ethridge, JJ.,* concur.