In re TEERLINK RANCH LTD., a California limited partnership, Debtor.

Heber N. TEERLINK; Erma D. Teerlink, Plaintiffs–Appellees,

v.

Alan G. LAMBERT, and Teerlink Ranch Ltd., et al., Defendants–Appellants.

Nos. 88–1876, 88–2441 and 88–15599.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 16, 1989.

Decided Oct. 6, 1989.

William McGrane, Shiver, McGrane & Martin, San Francisco, Cal., for Teerlink Ranch Ltd.

Dennis D. Davis, Goldberg, Stinnett & MacDonald, San Francisco, Cal., for Heber and Erma Teerlink.

Bernard Greenfield, Levy, Greenfield & Davidoff, San Jose, Cal., for Gerard & Lambert, Inc.

Before BRUNETTI and NOONAN, Circuit Judges, and HUPP,[*] District Judge.

NOONAN, Circuit Judge:

This case consolidating two appeals arising from a dispute between a developer and a seller of real estate involves the relationship between a bankruptcy court and a district court and the rules and principles governing bankruptcy. We hold that the powers conferred on a trustee or debtor in possession by 11 U.S.C. § 544 are not so extraordinary that a Chapter 11 debtor can load its debts on its neighbor. We affirm the district court.

## FACTS

Heber and Erma Teerlink (Teerlink) sold 58 acres of land in the hills above the city of Saratoga, Santa Clara county, California. The purchaser was Gerard & Lambert Inc., a company owned by Alan Gerard Lambert. The rights of this company were acquired by the defendant Teerlink Ranch, Ltd. (TRL). TRL had a number of limited partners, with Gerard & Lambert, Inc. as its sole general partner. After the partnership was formed, TRL gave a promissory note of $100,000 to the limited partners, securing the note with a deed of trust on all of the lots.

As part of the purchase price Teerlink was given a promissory note for approximately $1.5 million, secured by a deed of trust on the property. Teerlink was also given the right to a number of lots into which the property would be divided. Ulti-mately it was agreed that Teerlink would have six lots—9, 13, 14, 15, 16 and 23—and TRL would have 17 lots.

In 1985, TRL obtained a construction loan from the Bank of America for $2.9 million to develop all 23 lots. The loan was secured by a deed of trust dated March 12, 1985 on all 23 lots. Teerlink subordinated the 1980 deed of trust that he held to the bank's deed of trust. Teerlink also agreed with TRL to reduce the payment owed by TRL to reflect the cost TRL would incur in improving Teerlink's lots; Teerlink therefore exchanged his $1.5 million note for a note of $404,775.

In December 1986 the Gerard Development Company, also operated by Lambert, recorded a mechanic's lien of $167,168 against all 23 lots. Teerlink brought suit in Santa Clara Superior Court against TRL, the TRL partners, and the Bank of America, charging breach of contract and fraud and seeking rescission, injunction, damages and declaratory relief.

## PROCEEDINGS

Teerlink's suit was filed March 12, 1987. On March 19, 1987 TRL entered Chapter 11 and had the state court case removed to the bankruptcy court. TRL also sought declaratory relief against Teerlink in the bankruptcy court. The bankruptcy court consolidated this action with Teerlink's state court suit and certified the consolidated case to the district court.

On June 4, 1987 TRL reached what was entitled "Settlement Agreement and Mutual Release with the Bank of America." The agreement recited that TRL contended that the bank could not release lots 9, 13, 14, 15, 16 and 23 from the lien of the trust deed in the bank's favor without first obtaining relief from the stay imposed by 11 U.S.C. § 362 and that TRL would be subrogated to the bank's right under that deed of trust on payment by TRL of the secured debt.

---

[*] Honorable Harry L. Hupp, United States District Judge for the Central District of California, sit-ting by designation.

In settlement of these contentions TRL agreed to give the bank a guarantee of its debt to the bank and to secure this guarantee with a new deed of trust on lots 1, 4, 6, 11, 12, 18, 19, 20, 21, and 22. The bank agreed to release these lots from the March 12, 1985 deed of trust. TRL agreed that the bank would have relief from the automatic stay in order to enforce the new deed of trust.

The bank further agreed not to release lots 9, 13, 14, 15, 16 and 23 from the existing deed of trust before November 15, 1987 without TRL's approval. If the bank was paid in full the bank agreed to assign TRL both the debt and the March 12, 1985 deed of trust, without warranting "as to the legal effects of such assignment." The parties further agreed that they were not entering into the agreement "on the basis of any promise or representation expressed or implied, not otherwise contained herein."

On July 22, 1987 the bankruptcy court held a hearing at which it approved the Settlement Agreement and Mutual Release and authorized TRL to deliver to the Bank of America its guarantee and the new deed of trust. Teerlink, who was present at this hearing, appealed the order on the grounds that his deed of trust should not be subordinated to the new deed of trust in the bank's favor. The appeal was dropped when Teerlink's note was satisfied by Lambert.

On November 16, 1987 TRL, pursuant to order of the bankruptcy court, satisfied all of the remaining debt to the Bank of America by paying the bank $1,927,763.34. The bank promptly assigned the March 12, 1985 deed of trust to TRL. On the same date TRL's counsel wrote Teerlink's counsel announcing that TRL intended "to file a Notice of Sale with respect to your client's real property within the next several days."

Teerlink's second amended complaint was filed January 20, 1988. At that time Teerlink moved for partial summary judgment on his claim for a declaration that his lots were free of any encumbrance arising from the trust deed in favor of the Bank of America and its assignee TRL. The motion was granted March 10, 1988, and TRL appealed.

Teerlink in June 1988 moved for summary judgment on his claim for a declaration that two other encumbrances against his lots were nullities. The district court denied the motion but granted Teerlink partial relief by ordering the bankruptcy court to require that TRL's aliquot share of these liens be paid from the estate of TRL. TRL also appealed this order.

## ANALYSIS

■ *TRL's Rights As the Assignee of the Bank of America.* It is hornbook law that the debtor's payment of a debt discharges both the debtor and the guarantor of the debt. Where the debt is paid, the guarantee is extinguished. There is nothing more to guarantee.

TRL attempts to argue that it is not bound by this elementary rule because it had extraordinary powers as a debtor in possession exercising the rights of a judicial lien creditor under 11 U.S.C. § 544(a). These powers were so extraordinary, it says, that it was no longer a debtor paying its own debt, but a hypothetical judicial lien creditor paying a stranger's debt. Drawing by analogy on a decision of this court, *In re Center Wholesale Inc.*, 759 F.2d 1440 (9th Cir.1985), TRL argues that it could have blocked the bank from marshalling its collateral and seeking recourse on the loan against TRL's 17 lots before foreclosing on TRL's 6 lots. The maneuver of TRL by which it paid off the bank and got an assignment from the bank was, TRL maintains, a preemptive blocking of such marshalling.

■ TRL's argument invests the debtor in possession with powers of a superman. It transforms section 544(a) from a shield into a sword. With its aid, according to TRL, a debtor in possession may not only preserve its estate but successfully push the estate's obligations onto a third party. Section 544 does nothing of the kind. The purpose of the section is to enable the trustee to set aside preferential or fraudulent transfers and to preserve the assets of the estate against unfiled, unrecorded, or

secret liens. 4 *Collier on Bankruptcy* ¶ 544.01 (15th Ed.1979); *see Sampsell v. Straub,* 194 F.2d 228 (9th Cir.), *cert. denied,* 343 U.S. 927, 72 S.Ct. 761, 96 L.Ed. 1338 (1951) (analyzing predecessor of § 544).

TRL makes a vague appeal to language in the Supreme Court's opinion in *N.L.R.B. v. Bildisco,* 465 U.S. 513 at 528, 104 S.Ct. 1188 at 1197, 79 L.Ed.2d 482 (1984). But the very language to which TRL calls attention views the debtor in possession "as the same entity which existed before the filing of the bankruptcy petition." Consequently, TRL as debtor in possession paying the debt of TRL incurred prior to bankruptcy does not put itself in the position of one who pays another's debt and thereby gets an assignment of the debt he paid. TRL is still the same old debtor satisfying the same old debt.

A fall-back argument of TRL is that the bankruptcy court's order of July 20, 1988 approving the Settlement Agreement and Mutual Release determined the rights of Teerlink. TRL contends that since Teerlink participated in the hearing and even had an appeal from the order, Teerlink could not later collaterally attack the order.

This argument much over-states what the order of the bankruptcy court did. The bankruptcy court authorized TRL to settle with the Bank of America. It did not purport to determine the effect of the settlement on Teerlink's lots. The Settlement Agreement was explicit that the bank promised nothing as to the effect of the assignment the bank would make if TRL paid off its debt. There was nothing in the agreement and a fortiori nothing in the order of the bankruptcy court that barred Teerlink from seeking the declaration the district court issued. TRL argues that the bankruptcy court in its order exercised its power under 11 U.S.C. § 364(d)(1) to give the new deed of trust to the Bank of America the same priority as the March 12, 1985 deed of trust and that this ruling implied that the new deed of trust was security for a valid guarantee. No doubt it was. But there was no determination by the bankruptcy court of what the legal consequence was when the debtor satisfied its debt. Teerlink was not collaterally estopped from seeking the judgment of the district court.

■ *TRL's Aliquot Share of the Other Liens.* TRL argues that the district court exceeded its jurisdiction by ordering payment of a portion of the mechanic's lien and deed of trust from the bankruptcy estate. The bankruptcy court certified Teerlink's complaint to the district court. The effect of the certification was to withdraw the district court's reference of the case to the bankruptcy court and restore the case to the district court. 28 U.S.C. § 157(d); Northern District Local Rule 700–7. Contrary to TRL's contention, the district court had jurisdiction of Teerlink's case.

■ On the merits, the decision of the district court was reached on the basis of equitable principle which, confined by law, animates bankruptcy. *Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966); *In re Tucson Yellow Cab Co.,* 789 F.2d 701, 704 (9th Cir.1986). Teerlink had put himself in the position where his lots could be subjected to the debt incurred by the developer. The district court had no power to undo that arrangement. But the district court thought it manifestly unfair for Teerlink's lots to be loaded with all of the debt that benefited TRL. It was appropriate to make TRL's lots bear 17/23 of the burden. Our de novo review indicates that the district court properly exercised its equity power.

After this case was argued and submitted Teerlink paid the entire sum due in order to sell some of the lots. The note was reconveyed by the trustee, and the obligation to the original creditors has been satisfied. Under equitable principles Teerlink was subrogated to the claims of the note creditors. *See Caito v. United California Bank,* 20 Cal.3d 694, 144 Cal.Rptr. 751, 756, 576 P.2d 466, 471 (1978) (elements of equitable subrogation). Accordingly, the order of the district court is amended to require the trustee for TRL to pay the 17/23 directly to Teerlink as reimbursement for its share of the debt. The Teer-

link Ranch Ltd. motion to dismiss Appeal No. 88–15599 is denied.

Contrary to TRL's contention, the district court's order did not violate the automatic stay accorded the debtor by 11 U.S.C. § 362. The stay does not operate against the court with jurisdiction over the bankrupt.

AFFIRMED as AMENDED.