**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BILTMORE ASSOCIATES, LLC, as
Trustee of the Visitalk Creditors
Trust,
   *Plaintiff-Appellant,*

  v.

TWIN CITY FIRE INSURANCE
COMPANY, an Indiana corporation;
GREAT AMERICAN INSURANCE
COMPANY, a New York
corporation; CAROLINA CASUALTY
INSURANCE COMPANY; OLD REPUBLIC
INSURANCE COMPANY, a
Pennsylvania corporation; NORTH
AMERICAN SPECIALTY INSURANCE
COMPANY, a New Hampshire
corporation,
   *Defendants-Appellees.*

No. 06-16417

D.C. No.
CV-05-04220-FJM

8563

BILTMORE ASSOCIATES, LLC, as
Trustee of the Visitalk Creditors
Trust,
                    *Plaintiff-Appellant,*

                v.

TWIN CITY FIRE INSURANCE
COMPANY, an Indiana corporation;
GREAT AMERICAN INSURANCE
COMPANY, a New York
corporation; CAROLINA CASUALTY
INSURANCE COMPANY; OLD REPUBLIC
INSURANCE COMPANY, a
Pennsylvania corporation; NORTH
AMERICAN SPECIALTY INSURANCE
COMPANY, a New Hampshire
corporation,
                    *Defendants-Appellees.*

No. 07-16036

D.C. No.
CV-05-04220-FJM

OPINION

Appeal from the United States District Court
for the District of Arizona
Frederick J. Martone, District Judge, Presiding

Argued and Submitted
May 15, 2008—San Francisco, California

Filed July 10, 2009

Before: Andrew J. Kleinfeld and N. Randy Smith,
Circuit Judges, and Richard Mills,* District Judge.

Opinion by Judge Kleinfeld

*The Honorable Richard Mills, United States District Judge for the
Central District of Illinois, sitting by designation.

## COUNSEL

Andrew S. Jacob, Shughart Thompson & Kilroy, P.C., Phoenix, Arizona, for the appellant.

Michael F. Perlis, Stroock & Stroock & Lavan LLP, Los Angeles, California, for appellee Twin City Fire Insurance Company.

E. J. Kotalik, Jr., Peshkin & Kotalik, P.C., Phoenix, Arizona, for appellee Old Republic Insurance Company.

Mark G. Worischeck (briefed), Sanders & Parks, P.C., Phoenix, Arizona, for appellee Carolina Casualty Insurance Company.

Greg S. Comol (briefed), Lewis Brisbois Bisgaard & Smith LLP, Phoenix, Arizona, for appellee Great American Insurance Company.

Gena L. Sluga (briefed), Harper Christian Dichter Graif, PC, Phoenix, Arizona, for appellee North American Specialty Insurance Company.

## OPINION

KLEINFELD, Circuit Judge:

This is an insurance coverage dispute arising in the context of bankruptcy. It turns on the insured versus insured exclusion. We also resolve an associated attorneys' fees dispute.

### I.    Facts.

The district court dismissed the case for failure to state a claim on which relief could be granted, under Rule 12(b)(6). The complaint was supplemented by attachment of the insurance policies at issue to the defendants' motions.[1] The complaint and the insurance policies control the outcome.

Visitalk, an Arizona corporation, purchased directors and officers liability insurance from Reliance Insurance Company

---

[1]A court may consider documents, such as the insurance policies, that are incorporated by reference into the complaint. *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). There was a dispute about whether two endorsements, nos. 99 and 100, could properly be considered. The endorsements do not matter to the insured versus insured exclusion, which controls the outcome.

and Twin City Fire Insurance Company.[2] A corporation frequently agrees to protect and indemnify its directors and officers against claims made against them, such as in shareholders' derivative suits, on account of their work for the company. The policies in this case named Visitalk.com, Inc., and its directors and officers as insureds, and promised to pay losses that Visitalk and the directors and officers became liable to pay as a result of covered claims:

## I.   INSURING AGREEMENTS

This policy affords the following coverages:

### (A)   DIRECTORS' AND OFFICERS' LIABILITY

Except for Loss which the Insurer pays pursuant to Insuring Agreement (B) of this Policy, the Insurer will pay on behalf of the Directors and Officers Loss which the Directors and Officers shall become legally obligated to pay as a result of a Claim first made during the Policy Period or the Discovery Period, if applicable, against the Directors and Officers for a Wrongful Act which takes place during or prior to the Policy Period;

### (B)   COMPANY REIMBURSEMENT

The Insurer will pay on behalf of the Company Loss for which the Com-

---

[2]The complaint alleges that Twin City "succeeded in interest" to the Reliance policy. The parties dispute whether this issue was sufficiently pleaded. Because we resolve this case on the insured versus insured exclusion, which is the same in both policies, we do not resolve the dispute about whether Twin City's successorship was adequately pleaded.

> pany has, to the extent permitted or required by law, indemnified the Directors and Officers, and which the Directors and Officers have become legally obligated to pay as a result of a Claim first made during the Policy Period or Discovery Period, if applicable, against the Directors and Officers for a Wrongful Act which takes place during or prior to the Policy Period. . . .

The policies excluded from this coverage various claims, such as personal injury, defamation, and, central to this case, claims brought by Visitalk itself against its own officers or directors. There is an exception to this exclusion for stockholder derivative actions and claims by former officers and directors for wrongful termination, discrimination or sexual harassment:

> V.  EXCLUSIONS
>
> The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against the Directors and Officers . . .:
>
> (D)  brought or maintained by or on behalf of an Insured in any capacity or by an security holder of the company except:
>
> > (1)  a Claim, including, but not limited to, a security holder class or derivative action that is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of an Insured;

(2)   an Employment Practice Claim[3] by a former Director or a present or former Officer;

(3)   a claim for contribution or indemnity if the Claim directly results from another Claim that is otherwise covered under this Policy; or

(4)   a claim by any employee(s) of the Company described in IV.(D)(2) of the Policy.

This case turns on the exclusion from coverage quoted above, commonly called the "insured versus insured" exclusion. Basically, if Visitalk sues its directors or officers itself, they have no liability coverage. Some covered claims, such as shareholders' derivative actions, are excepted from the exclusion, even though they are at least in theory on behalf of the corporation. But the exception to the exclusion only applies if the claims are "instigated and continued totally independent of" the corporation.

The exclusion was put at issue when, after two years in business, Visitalk filed a chapter 11 bankruptcy petition. Visitalk, as "debtor and debtor in possession," sued some of its recently discharged officers and directors for breaches of their fiduciary duties. The attorney representing Visitalk as debtor in possession told the insurers that officers and directors of Visitalk had looted the company. He asserted that they had charged grossly excessive amounts as expenses for inappropriate things, such as "personal expenses, strippers, lavish

---

[3]The policies define an Employment Practice Claim as "any Claim for or arising out of . . . any actual or alleged wrongful dismissal, discharge or termination (either actual or constructive) of employment, sexual harassment of an employee, unlawful employment discrimination, wrongful failure to hire or promote, or failure to grant tenure."

trips, and gifts" of no value to the company, and failed to institute appropriate financial controls to prevent this sort of thing. He claimed that the directors and officers purchased unnecessary software and usurped corporate opportunities. He also claimed that the directors had paid one officer more than a million dollars to cover up the inappropriate issuance of warrants to other officers to purchase Visitalk's common stock. The insurers declined to cover the claims.

This case arises out of a variation on what insurance litigators often call the "confession of judgment, assignment of rights, covenant not to execute" technique. Sometimes when a liability insurer denies coverage and declines to defend, the injured party sues the insured tortfeasor, and they agree on a confession of judgment, assignment of rights, and covenant not to execute. That way the insured party obtains protection from having to pay anything, and the injured party steps into the insured's shoes in order to sue the liability insurer. The injured party may be able to get more than the policy limits from the insurer, if he prevails on coverage, because damages for bad faith denial of coverage and punitive damages are in the nature of tort damages, not limited by the insurance contract.

Visitalk filed a chapter 11 reorganization plan which assigned its claims against the directors and officers to a trust established for its creditors (the 'Visitalk Creditors Trust') and named Biltmore as trustee. Biltmore and four directors and officers against whom Visitalk had asserted claims then agreed to settle Visitalk's claims for about $175 million. The four directors and officers assigned to the creditors' trust their rights against the liability insurers. The complaint does not say whether the confession of judgment and assignment of rights was coupled with the typical covenant not to execute against the settling directors and officers personally. But the existence of such a covenant does not matter here. Basically, Visitalk sued its directors and officers for breach of their fiduciary duties, the directors and officers liability insurers

refused coverage under the insured versus insured exclusion, Visitalk assigned the claims to its creditors' trust, and Biltmore, as trustee, then settled with four directors and officers for a confession of judgment of $175 million and an assignment of whatever claims the directors and officers had against the insurers.

Biltmore, as trustee for the creditors' committee, then sued the insurance companies on the basis of these claims.[4] The district court dismissed the case because the complaint failed to set forth sufficient facts to show that the named defendant, Twin City, had obligated itself as successor to Reliance to cover the Reliance policy period, and failed to allege sufficient facts to show that the underlying claims were made within the Twin City policy period. The district court also relied in part on a local rule governing motions practice. The district court awarded attorneys' fees to the insurers and against Biltmore personally, under Arizona's statute adopting the English rule for contract cases.[5] Biltmore timely appeals both decisions.[6]

We affirm the dismissal of the complaint, but on different grounds (also urged in district court and fully briefed here), that the insured versus insured exclusion applies. We do not decide whether the district court's grounds for dismissal were correct. We remand the award of attorneys' fees to clarify that Biltmore is not personally liable, because it was acting as representative of the trust and was not personally at fault.

---

[4]There are multiple insurance companies involved in this case because several layers of coverage were issued by multiple carriers.

[5]Ariz. Rev. Stat. Ann. § 12-341.01(A) (2003).

[6]No. 06-16417 is the merits appeal, No. 07-16036 is the attorneys' fees appeal.

II.   The insured versus insured exclusion.

In appeal number 06-16417, Biltmore appeals the dismissal of its complaint for failure to state a claim. We review the 12(b)(6) dismissal de novo.[7] We can affirm on any ground supported by the record.[8] We conclude that insured versus insured exclusion in the relevant policies bars coverage for Biltmore's claims, because a post-bankruptcy debtor in possession acts in the same capacity as the pre-bankruptcy debtor for the purpose of directors and officers liability insurance. There are two issues; (1) what the insured versus insured exclusion means, and (2) how bankruptcy law affects its application.

A.   The meaning of the exclusion.

As shareholder's derivative suits and class actions against directors and officers became more common, people began to demand that companies indemnify them against the risks of liability if they were to serve as directors and officers. Corporations accordingly bought liability insurance for their directors and officers to induce qualified people to serve.[9] Insured versus insured exclusions are boilerplate in these and other kinds of liability policies.[10] Directors and officers liability policies are colloquially called "D & O insurance." The exclusion arose in D & O policies as a reaction to several lawsuits in the mid-1980s in which insured corporations sued their own directors to recoup operational losses caused by improvident or unauthorized actions.[11] Such lawsuits created prob-

---

[7] *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).

[8] *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

[9] *See generally* Michael D. Sousa, *Making Sense of the Bramble-Filled Thicket: The "Insured vs. Insured" Exclusion in the Bankruptcy Context*, 23 Emory Bankr. Dev. J. 365, 372-77 (2007).

[10] Barry R. Ostrager & Thomas R. Newman, 2 *Handbook on Insurance Coverage Disputes* § 20.02[g], at 1384 (14th ed. 2008).

[11] *See, e.g.*, *Nat'l Union Fire Ins. Co. v. Seafirst Corp.*, No. C85-396R, 1986 WL 1174695, at *6 (W.D. Wash. Mar. 19, 1986) ("After carefully

lems of moral hazard, collusion, and unintended expansion of coverage. The reasonable expectations of the parties were that they were protecting against claims by outsiders, not intra-company claims.

[1] The exclusion at issue in this case provides "[t]he Insurer shall not be liable to make any payment for Loss in connection with any Claim made against the Directors and Officers . . . brought or maintained by or on behalf of an Insured in any capacity." This is not the gobbledygook it sounds like to the uninitiated on an overly rapid reading. Insurance against shareholders derivative suits and employment claims is essentially liability insurance. The trigger for liability insurance is a claim by someone not under the control of the insured himself. By contrast, people buy casualty insurance against the risks created by their own bad luck or carelessness. Thus, one buys fire insurance and gets indemnified even for carelessly leaving a lit candle untended and burning down one's own house. And one buys automobile comprehensive and collision coverage to get indemnified for carelessly damaging one's own car.

Though there is overlap, many of the risks that affect the price of liability insurance differ from the risks that affect casualty insurance, particularly moral hazard and collusion. For example, almost nobody intentionally induces someone else to collide with his car, but someone might have an interest in burning down his own house if he owed more on it than it was worth. Companies have traditionally purchased "fidelity bonds" to insure the company against employees' dishonesty.[12] Thus if an employee was "bonded" and stole from the

reviewing the language of the policy, the court concludes that the policy plainly and unambiguously covers direct actions by Seafirst itself against its own directors and officers. According to the policy terms, National Union must pay for loss suffered as a result of '*any* claim or claims' against the directors and officers.").

[12]David L. Bickelhaupt, *General Insurance* 748-50 (9th ed. 1974); William R. Vance & Buist M. Anderson, *Handbook on the Law of Insurance* § 197 (3d ed. 1951).

company, the insurance company that had issued the bond would have to indemnify the company for the loss.

Because risks such as collusion and moral hazard are much greater for claims by one insured against another insured on the same policy than for claims by strangers, liability policies typically exclude them from coverage. Allowing such claims would turn liability insurance into casualty insurance, because the company would be able to collect from the insurance company for its own mistakes, since it acts through its directors and officers. The exclusion protects of course against collusion, and also against the risk of selling liability insurance for what amounts to a fidelity bond. If the exclusion were ignored, then those companies who only want to pay for protection against third party claims they cannot control would have to bear the additional financial burden of paying for claims over which companies have more control.

**[2]** Biltmore does not (and could not) argue that the exceptions to the insured versus insured exclusion apply. The claim is not by a fired director for wrongful termination or one of the other excepted employment practice claims, and the claim is not brought "by . . . a security holder," as the exception to the exclusion for shareholders' derivative actions requires. The only question before us on the language of the exclusion is whether the underlying suit was "brought or maintained on behalf of an Insured in any capacity."

**[3]** Appellant argues that this claim is on behalf of the creditors and brought by the creditors' trustee, Biltmore, so it is not "brought or maintained on behalf of an Insured in any capacity." We conclude that this argument is mistaken. First, the underlying lawsuit, for which coverage is sought, alleged that the directors and officers of Visitalk breached their statutory and fiduciary duties. A cause of action for mismanagement belongs to the corporation.[13] Shareholders and creditors

---

[13]*Ross v. Bernhard*, 396 U.S. 531, 538-39 (1970); *Hidalgo v. McCauley*, 70 P.2d 443, 445-46 (Ariz. 1937); *Realty Exch. Corp. v. Cadillac Land & Dev. Co.*, 475 P.2d 522, 545-46 (Ariz. Ct. App. 1970). *See generally* 18B Am. Jur. 2d *Corporations* § 1597.

can bring a suit for mismanagement only derivatively, on behalf of the corporation. True, the directors and officers have coverage for derivative claims, but not for claims by Visitalk. Coverage is excluded if Visitalk sues them, and it did. The lawsuit was "instigated and continued" by Visitalk. That the creditors rather than the shareholders will get whatever money the insurer pays does not avoid the exclusion. Creditors get much, most, or even all of the money any business collects, as part of the business's overhead, which is why a landlord is always happy to see diners in his tenant's restaurant.

[4] Second, the claim has to be made by an insured party for it to have any contractual basis in the insurance policies. The named insured and others insured are defined in all the policies here to be Visitalk, Inc., and its directors and officers, and no one else. None of the insurance companies issued any policies to Biltmore, or to Visitalk's creditors. Sometimes a promisee buys insurance to protect against a potential debtor's risk, as when a concert promoter buys life insurance on a star, but Visitalk's creditors bought no insurance on Visitalk and its principals. The creditors have no independent contractual claim against the insurance companies, because they are not insureds.

[5] Third, the claim for which coverage is sought was indeed "instigated and continued" by Visitalk, as a chapter 11 "debtor and debtor in possession." The First Amended Complaint says in paragraphs 22 and 24 that Visitalk filed a complaint in the underlying case against the four directors and officers, and then assigned its claims to the creditors' trust with Biltmore as trustee. Biltmore sued the insurers as assignee of the directors' and officers' claims for failure to cover and its bad faith in so doing. An assignee of a claim against an insurance company can have no stronger claim than the assignor who assigned the claim.[14] Biltmore has to

---

[14]*Bassidji v. Goe*, 413 F.3d 928, 939 (9th Cir. 2005); *Stephens v. Textron, Inc.*, 619 P.2d 736, 739 (Ariz. 1980); *Carpenter v. Superior Court*, 422 P.2d 129, 131 (Ariz. 1966).

step into an insured's shoes as assignee to have any claim against their insurers, since Biltmore is not an insured. And in those shoes, it is barred by the exclusion. Biltmore cannot jump into the insureds' shoes to bring the lawsuit, out of their shoes to claim not to be suing as though it were the insureds, and then back into their shoes to get compensatory and punitive damages for the insurers' failure to cover their liabilities.

## B.    Bankruptcy.

The additional feature of this case is bankruptcy. Biltmore argues that Visitalk, the chapter 11 debtor in possession that brought the underlying suit, is not the same entity as Visitalk, the insured corporation. Several bankruptcy decisions around the country, including one in this circuit, treat a post-bankruptcy entity as different from the debtor before it went into chapter 11 for purposes of the insured versus insured exclusion.[15] Several others hold that they are the same entity for

---

[15]*Unified W. Grocers, Inc. v. Twin City Fire Ins. Co.*, 457 F.3d 1106, 1116-17 (9th Cir. 2006) (bankruptcy trustee of subsidiary different entity than subsidiary itself); *Alstrin v. St. Paul Mercury Ins. Co.*, 179 F. Supp. 2d 376, 403-05 (D. Del. 2002) (Chapter 11 estate representative distinct entity from debtor); *Grafenauer v. Mukamal (In re Laminate Kingdom, LLC)*, Nos. 07-10279, 07-01792, 2008 WL 704396, at *3-4 (Bankr. S.D. Fla. Mar. 13, 2008) (Chapter 7 trustee is distinct entity from debtor); *Cohen v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. (In re County Seat Stores, Inc.)*, 280 B.R. 319, 324-26 (Bankr. S.D.N.Y. 2002) (trustee legally distinct entity from debtor, distinguishing trustee from debtor in possession); *Gray v. Executive Risk Indem., Inc. (In re Molten Metal Tech., Inc.),* 271 B.R. 711, 728-31 (Bankr. D. Mass. 2002) (Chapter 11 trustee not same entity as debtor, distinguishing debtor in possession), *aff'd*, No. 02-10289, 2002 WL 923936 (D. Mass. May 6, 2002), *see also Narath v. Executive Risk Indem., Inc.*, No. 01-10122, 2002 WL 924231, at *2 (D. Mass. Mar. 14, 2002) (same, also arising from Molten Metal's insolvency); *Rieser v. Baudendistel (In re Buckeye Countrymark, Inc.)*, 251 B.R. 835, 840-41 (Bankr. S.D. Ohio 2000) (Chapter 7 trustee not the same entity as debtor); *Rigby v. Underwriters at Lloyd's, London*, 907 So. 2d 1187, 1188-89 (Fla. Dist. Ct. App. 2005) (Chapter 7 trustee, listed as insured, still different entity from debtor), *review granted sub nom. Cer-*

this purpose.[16] Few cases, and no circuit court decisions, deal with the specific situation of a chapter 11 debtor in possession.[17]

---

*tain Underwriters at Lloyd's of London v. Rigby*, 917 So. 2d 192 (Fla.), *review dismissed as improvidently granted*, 934 So. 2d 1183 (2006); *Cirka v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 20250, 2004 WL 1813283, at *7-9 (Del. Ch. 2004) (creditor's committee not same entity or assignee of debtor in possession, which was specifically covered by the insured versus insured exclusion at issue).

[16]*Nat'l Union Fire Ins. Co. v. Olympia Holding Corp.*, 148 F.3d 1070 (11th Cir. 1998) (unpublished table disposition) (affirming partial summary judgment that exclusion bars coverage for a bankruptcy's trustee claim against former directors and officers) (11th Circuit Rule 36-2 says that "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."), *aff'g*, inter alia, No. 94-2081, 1996 WL 33415761, at *6-7 (N.D. Ga. June 4, 1996); *Reliance Ins. Co. of Ill. v. Weis*, 5 F.3d 532 (8th Cir. 1993) (unpublished table disposition) (affirming "on the basis of the well-reasoned opinion of the district court."), *aff'g* 148 B.R. 575, 581-83 (E.D. Mo. 1992) (bankruptcy plan agent is assignee of debtor's claims, "no significant legal difference" between debtor and debtor's bankruptcy estate); *Federal Ins. Co. v. Surujon*, No. 07-22819, 2008 WL 2949438, at *6 & n.5 (S.D. Fla. July 29, 2008) (reorganized post-bankruptcy company same entity as pre-bankruptcy debtor); *Stratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 03-12018, 2004 WL 1950337, at *4-6 (D. Mass. Sept. 3, 2004) (reorganized post-bankruptcy company successor entity of pre-bankruptcy debtor).

[17]*Compare Terry v. Federal Ins. Co. (In re R.J. Reynolds-Patrick County Mem'l Hosp., Inc.)*, 315 B.R. 674, 678-82 (W.D. Va. 2003) (litigation trustee, assignee of debtor in possession, same entity as debtor, distinguishing bankruptcy trustee) *with HA 2003, Inc. v. FDIC (In re HA 2003, Inc.)*, 310 B.R. 710, 717-19 (Bankr. N.D. Ill. 2004) (Debtor in possession not same entity as pre-bankruptcy debtor under exception to insured versus insured exclusion for claims "brought by or on behalf of a bankruptcy trustee, magistrate or any other person appointed by a bankruptcy court or judge, or authorized under applicable law to act on behalf of a debtor") *and Pintlar Corp. v. Fid. & Cas. Co. of N.Y. (In re Pintlar)*, 205 B.R. 945, 947-48 (Bankr. D. Idaho 1997) (litigation trustee, assignee of debtor in possession, not same entity as debtor under terms of trust precluding debtor's successor entities from receiving any benefit from the prosecution of claims), *aff'd sub nom. Cigna Ins. Co. v. Gulf USA Corp.*, No. 97-250, 1997 WL 1878757, at *3-5 (D. Idaho Sept. 11, 1997). *See also Federal*

**[6]** We conclude that for purposes of the insured versus insured exclusion, the prefiling company and the company as debtor in possession in chapter 11 are the same entity. The bankruptcy code defines a Chapter 11 debtor in possession as the debtor.[18] The debtor, in turn, is defined as the "person or municipality concerning which a case under this title has been commenced."[19] Bankruptcy cases can be filed only with respect to pre-bankruptcy persons.[20] Thus the debtor in possession is the debtor, and the debtor is the person, Visitalk, that filed for bankruptcy. Applying these statutory provisions literally, Visitalk, the debtor in possession, is the same person for bankruptcy purposes as Visitalk, the pre-bankruptcy corporation. There is no good reason to interpret the language other than literally in this context.

In *NLRB v. Bildisco & Bildisco*, the Supreme Court reached the same conclusion in the labor law context, stating "it is sensible to view the debtor-in-possession as the same 'entity' which existed before the filing of the bankruptcy petition."[21] While the Court divided on other points, it unanimously agreed that the 'new entity' theory should be rejected.[22] Biltmore argues that *Bildisco* did not treat the debtor-in-

---

*Ins. Co. v. D'Aniello*, No. 05-305, 2006 WL 3386625, at *13 (W.D. Pa. Nov. 22, 2006) (debtor in possession not the same entity as debtor, claims brought originally brought by unsecured creditor's committee by leave of the district court, then assigned to litigation trust on behalf of creditors, not debtor in possession).

We overrule the bankruptcy and district court opinions in *Pintlar Corp. v. Fid. & Cas. Co. of N.Y. (In re Pintlar)*, 205 B.R. 945 (Bankr. D. Idaho 1997), *aff'd sub nom. Cigna Ins. Co. v. Gulf USA Corp.*, No. 97-250, 1997 WL 1878757 (D. Idaho Sept. 11, 1997), for the reasons stated in this opinion.

[18]11 U.S.C. § 1101(1) (2006).

[19]11 U.S.C. § 101(13) (2006).

[20]*Cf.* 1 U.S.C. § 1 (2006) (person includes corporate entities).

[21]465 U.S. 513, 528 (1984).

[22]*Id.* at 544 (Brennan, J. concurring in part and dissenting in part).

possession as the same entity as the debtor, because it permitted the debtor-in-possession to reject a labor agreement which the debtor could not. That argument confuses the right of a bankrupt to reject an executory contract with the question of whether it is the promisor under the contract. *Bildisco* explains that "[o]bviously, if the [debtor-in-possession] were a wholly 'new entity,' it would be unnecessary for the Bankruptcy Code to allow it to reject executory contracts, since it would not be bound by such contracts in the first place.' "[23] The converse applies to the case at bar. Two subsequent, similarly unanimous opinions of the Court treat a bankrupt entity as the same as the pre-bankruptcy entity.[24]

Our own authorities speak variously in different contexts to whether a chapter 11 debtor in possession should be treated as a different entity for various purposes. Biltmore points to two 1993 cases in which we stated that the debtor and debtor-in-possession are "legally distinct entities," *Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n*[25] and *Bonner Mall Partnership v. U.S. Bancorp Mortgage Co. (In re Bonner Mall Partnership).*[26] *Hillis Motors* does not involve a debtor in possession or insurance. It concerns application of the automatic stay provision to the involuntary dissolution of a corporation

---

[23]*Id.* at 528.

[24]*O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86 (1994) (FDIC as a bank receiver under 12 U.S.C. § 1821 is treated as if it were pre-receivership bank — "The FDIC as receiver 'steps into the shoes' of the failed S&L" and " 'any defense good against the original party is good against the receiver.' ") (citations omitted); *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343 (1985) (Trustee, as bankrupt corporation's management, has the power to waiver attorney-client privilege just like pre-bankruptcy corporation's management).

[25]997 F.2d 581, 585 n.6 (9th Cir. 1993).

[26]2 F.3d 899, 915 (9th Cir. 1993) ("Bankruptcy law is very formalistic in that it treats the debtor, the debtor-in-possession, and old equity as legally distinct entities *when in reality they may all be one and the same*.") (emphasis added), *cert. granted*, 510 U.S. 1039 (1994), *aff'd as moot*, 513 U.S. 18.

by a governmental entity.[27] *Bonner Mall* addresses application of the "new value doctrine" to priorities between a bank and providers of new capital in a reorganization of a debtor in possession under chapter 11.[28] Neither speaks to insurers' obligations or the effect of the insured versus insured exclusion in debtor in possession in chapter 11 bankruptcies. Nor do they speak to the insuperable problem appellant has in this case, that if Biltmore stands in Visitalk's shoes, it has no coverage because of the insured versus insured exclusion.

The more appropriate precedents are *DiSalvo v. DiSalvo (In re DiSalvo)*[29] and *Teerlink v. Lambert (In re Teerlink Ranch Ltd.)*,[30] though they too involve different factual circumstances. In *DiSalvo v. DiSalvo*, a debtor personally owed money to a creditor, but as debtor in possession sued the creditor for abuse of process and other torts.[31] The debtor's purpose was to dump his debt into the pot for unsecured creditors, but recover outside the bankruptcy for a debt flowing the other way, to himself. We held that "in the chapter 11 context a debtor and debtor in possession are *not* to be treated as separate legal entities," applying the Supreme Court's analysis in *Bildisco*, though we recognized that *Bildisco* was a labor law case and *DiSalvo* was not.[32]

Similarly, in *Teerlink v. Lambert*, we treated the debtor in

---

[27]*Hillis Motors*, 997 F.2d at 585 ("In this appeal, we must decide whether federal bankruptcy law prohibited the DCCA from involuntarily dissolving Hillis pursuant to state law in 1986."); *see also id.* at 592 ("Bankruptcy does not grant debtors rights greater than those they would receive outside bankruptcy.").

[28]*Bonner Mall P'ship*, 2 F.3d at 901 ("This case requires us to decide whether the new value 'exception' to the absolute priority rule surives the enactment of the Bankruptcy Reform Act of 1978 . . . .").

[29]219 F.3d 1035 (9th Cir. 2000).

[30]886 F.2d 1233 (9th Cir. 1989).

[31]*DiSalvo*, 219 F.3d at 1037-39.

[32]*Id.* at 1038 (citing *Bildisco*, 465 U.S. at 528).

possession as "still the same old debtor satisfying the same old debt."[33] This quotation was the holding of *Teerlink*, rejecting the debtor in possession's argument that "it was no longer a debtor paying its own debt, but a hypothetical judicial lien creditor paying a stranger's debt."[34] That argument resembles Biltmore's, that for purposes of the insured versus insured exclusion, Visitalk as debtor in possession is a different entity than it was before bankruptcy. As in *Bildisco*, *DiSalvo*, and *Teerlink*, Visitalk in chapter 11 and out of it "are *not* to be treated as separate entities"[35] for purposes of what its directors and officers owe Visitalk.

[7] It is certainly true that the interests differ once a debtor goes into bankruptcy. Prior to Visitalk's bankruptcy, the underlying lawsuit belonged to Visitalk as a corporation. Once it filed its voluntary bankruptcy petition, ownership of the cause of action fell into the bankruptcy estate.[36] Visitalk became the debtor in possession of the bankruptcy estate, empowered to act as a trustee and required to act as a fiduciary for its creditors and shareholders.[37] The differences in the fiduciary responsibilities of Visitalk's management on account of bankruptcy, however, do not make Visitalk a different entity for purposes of the insured versus insured exclusion.[38]

---

[33]*Teerlink*, 886 F.2d at 1236.

[34]*Id.* at 1235.

[35]*DiSalvo*, 219 F.3d at 1038; *see also Bildisco*, 465 U.S. at 528; *Teerlink*, 886 F.2d at 1236.

[36]11 U.S.C. § 541 (2006).

[37]11 U.S.C. §§ 1107, 1104 (2006).

[38]Before bankruptcy, the principals must exercise their business judgment to act in the best interest of the shareholders. *See* Ariz. Rev. Stat. Ann. § 10-830 (2004); *see generally* 3A *Fletcher Cyc. Corp.* § 1036. In bankruptcy, the principals must exercise their business judgment to act in the best interest of the bankruptcy estate. *Bennett v. Williams*, 892 F.2d 822, 824 (9th Cir. 1989); *see generally* 7 *Collier's on Bankruptcy* ¶ 1108.07 (15th ed. 2008).

Biltmore argues that Visitalk, as debtor in possession, brought the underlying suit as representative of the creditors of the bankruptcy estate, so the insured versus insured exclusion does not apply. This argument presupposes that a suit brought as representative of the creditors is brought on their behalf, conflating 'for the benefit of' and 'on behalf of.' Just because the "creditors could have asserted fiduciary duty claims outside the bankruptcy context similar to those pressed by the Trustee, . . . does not prove that the Trustee is asserting 'creditors' claims' . . . . Rather, it is simply because state law often permits creditors to pursue derivative claims *on an insolvent corporation's behalf*."[39] Even if Visitalk, as debtor in possession, is acting in the capacity of representative for the creditors, it is advancing their interests by bringing suit on behalf of the pre-bankruptcy corporation. The suit is for the benefit of the creditors, but on behalf of the pre-bankruptcy corporation.

It may be (we do not know) that every penny recoverable from the liability insurers would go to the creditors of Visitalk and its principals. But that might happen even if there were no bankruptcy, and a debtor owed creditors every penny it could recover. In a sense, when any business obtains revenue, its success is on behalf of its employees and suppliers as well as (or more than) its owners, but that does not avoid the insured versus insured exclusion. The liability insurance that the corporation and its principals bought to protect against shareholders' derivative suits cannot be turned into an available pot for the corporation's creditors by enforcing the insurers' obligations while disregarding the parties' agreement to limit those obligations to exclude insured versus insured claims.

**[8]** Biltmore argues that this analysis creates windfall for the insurance companies, because creditors would have a cov-

---

[39] *Smith v. Arthur Andersen, LLP*, 421 F.3d 989, 1006 (9th Cir. 2005) (emphasis added).

ered claim before the bankruptcy against the principals of an insolvent corporation, but not after. That is not quite right, because before bankruptcy, the creditor would first have to demand that the insolvent corporation bring the claim,[40] and if the corporation did, then the insured versus insured exclusion would still bar recovery. Bankruptcy does not erect the bar to recovery, the insurance policy does. All bankruptcy did to the creditors was impose the automatic stay and require them to advance their claims within the bankruptcy proceeding;[41] it did not change the insurance policies.

[9] We therefore affirm the dismissal of the complaint. The alternative position would create a perverse incentive for the principals of a failing business to bet the dwindling treasury on a lawsuit against themselves and a coverage action against their insurers, bailing the company out with the money from the D & O policy if they win and giving themselves covenants not to execute if they lose. That is among the kinds of moral hazard that the insured versus insured exclusion is intended to avoid.

---

[40]Ariz. Rev. Stat. Ann. § 10-742 (2004); *see also* Fed. R. Civ. P. 23.1(a).

[41]A creditor can demand that the debtor in possession bring an action on its behalf. If the debtor in possession refuses, the creditor "may appear and be heard" on the issue in the bankruptcy proceeding. 11 U.S.C. § 1109(b) (2006). After such a hearing, the court must allow the creditors' committee to sue independent of the debtor in possession if the failure to bring suit does not adequately protect the creditor's interests or the chose in action is of inconsequential value to the estate. 11 U.S.C. §§ 362(d)(1), 554(b) (2006). *Compare Terry v. Federal Ins. Co. (In re R.J. Reynolds-Patrick County Mem'l Hosp., Inc.)*, 315 B.R. 674, 678-82 (W.D. Va. 2003) (litigation trustee, assignee of debtor in possession, same entity as debtor) *with Federal Ins. Co. v. D'Aniello*, No. 05-305, 2006 WL 3386625, at *13 (W.D. Pa. Nov. 22, 2006) (litigation trustee, assignee of unsecured creditor's committee that brought suit by leave of the district court, not same entity as debtor in possession).

### III.    Attorneys' fees.

In appeal number 07-16036, Biltmore contests the $88,565.59 attorneys' fees award in favor of the insurers. The fees were awarded under the Arizona fee shifting statute for contract cases,[42] not as a sanction.[43] Biltmore does not challenge whether the fees were properly awarded at all, nor does it challenge the amount. Its challenge goes to whether fees could properly be awarded against Biltmore personally, rather than in its representative capacity. The judgment says that it is against "Biltmore Associates, L.L.C., as Trustee of the Visitalk Creditors Trust," but the judge denied Biltmore's motion to bar execution against its own assets.

Biltmore makes two arguments on appeal. First, relying on bankruptcy law, it contends that our decision in *Metcalf v. Golden (In re Adbox, Inc.)*[44] barred the district court from properly imposing judgment against its personal assets because it acted solely in the representative capacity of a bankruptcy trustee. Second, relying on the general law of trusts, Bilmore posits that because it captioned its pleading "Biltmore Associates, L.L.C., as Trustee of the Visitalk Creditors Trust," and because it was acting for the creditors' trust, fees should have been awarded only against the trust. We deal with each of these arguments in turn.

### A.    Bankruptcy trustees.

Biltmore's bankruptcy law argument has no merit, because

---

[42]Ariz. Rev. Stat. Ann. § 12-341.01(A) (2003) ("In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees.").

[43]Ariz. Rev. Stat. Ann. § 12-341.01(C) (2003) ("The court shall award reasonable attorney fees in any contested action upon clear and convincing evidence that the claim or defense constitutes harassment, is groundless and is not made in good faith.").

[44]488 F.3d 836 (9th Cir. 2007).

Biltmore is not a bankruptcy trustee. A bankruptcy proceeding may be crowded with trustees, perhaps the trustees under deeds of trust on real property seeking relief from the stay so that they can foreclose, trustees for minors and for inter vivos trusts trying to keep assets out of the bankruptcy estate, and trustees for decedents, but they are not all the same. Biltmore was not appointed as trustee of the bankruptcy estate. Visitalk, the bankrupt, remained a debtor in possession.

[10] The creditors' committee hired Biltmore as its trustee. Under 11 U.S.C. § 1102, the United States Trustee appoints a committee of the creditors holding unsecured claims, to provide access to information for unsecured creditors not on the committee and to solicit and receive comments from them.[45] The creditors committee can hire attorneys, accountants, and other agents to perform services for it.[46] In this case, the creditors' committee retained Biltmore Associates, L.L.C., as a trustee, with the approval of the bankruptcy court. The committee provided that the trustee would "hold all, right, title and interest in and to the causes of action on behalf of the beneficiaries of the Creditors' Trust," and could "sue and be sued in a representative capacity for the trust." This lawsuit took place outside the bankruptcy court, as an ordinary civil action for breach of contract between a trustee on behalf of a beneficiary against promissors, the insurance companies. No bankruptcy authority of which we are aware provides immunity to a trustee hired by the creditors' committee, as opposed to the chapter 11 trustee appointed by the court. *Metcalf v. Golden (In re Adbox, Inc.)*[47] and the other authorities cited by Biltmore only speak to chapter 11 trustees appointed by the court.

---

[45] 11 U.S.C. § 1102(a)(1), (b)(3) (2006).

[46] 11 U.S.C. § 1103(a) (2006).

[47] 488 F.3d 836 (9th Cir. 2007).

B.  Trustees generally.

**[11]** Biltmore's second argument, that the general law of trusts shields its personal assets from liabilities incurred while acting as a representative for the trust, is correct. Trustees used to be personally liable, albeit with indemnity rights, for obligations incurred on behalf of the trust.[48] But this doctrine has changed. Over the last few decades, the law has become more protective of trustees.[49] The Uniform Trust Code, in force in Arizona, provides that the trustee is personally liable only if he is personally at fault for the obligation.[50] Otherwise, the trustee is liable only in his representative capacity.

*Haskett v. Villas at Desert Falls, Inc.*[51] speaks to this issue, albeit in California rather than Arizona. The California Court of Appeal applied a California statute (identical to Arizona's) to a nearly identical set of facts. A trustee filed a contract claim against an individual and a corporation.[52] The complaint was dismissed, with attorneys' fees and costs awarded against

---

[48]Restatement (Second) of Trusts §§ 261, 265 (1959); *Richardson v. Cortner*, 105 So. 2d 456, 456 (Miss. 1958) ("When a party brings . . . a suit in his name in such representative capacity (trustee in a chattel deed of trust), he is individually liable for costs, insofar as the opposite party and the officers of the court are concerned.").

[49]*See* Restatement (Second) of Trusts §§ 265 cmt. a, 271A cmt. a (1959) (both noting "the modern trend" limiting a trustee's personal liability); *see generally, e.g.*, George Gleason Bogart et al., *The Law of Trusts and Trustees* § 732 (describing the evolution from the "Orthodox Common Law Rule—No Direct Representative Liability" to the "Statutory Trend Toward Direct Representative Liability").

[50]Ariz. Rev. Stat. Ann. § 14-11010(B) (West Supp. 2008) ("A trustee is personally liable . . . for obligations arising from ownership or control of trust property . . . only if the trustee is personally at fault."); Unif. Trust Code § 1010(b), 7C U.L.A. 227 (Supp. 2003) (same). While the revision to the Arizona Trust Code only became effective this year, it continues the previous limitation of liability found in Arizona Revised Statutes Annotated § 14-7306(B) (2005) (repealed 2009).

[51]108 Cal. Rptr. 2d 888 (Ct. App. 2001).

[52]*Id.* at 892-93.

the trustee.[53] The California Court of Appeal determined that the "trustee cannot be held personally liable . . . unless the party seeking to impose such personal liability on the trustee demonstrates that the trustee *intentionally or negligently* acted or failed to act in a manner that established a personal fault."[54] The court reached this conclusion based on California Probate Code § 18001, which contains the exact same language as Arizona Revised Statutes § 14-11010, "A trustee is personally liable for *obligations* arising from ownership or *control* of trust property *only* if the trustee is *personally at fault*."[55] The court explicitly rejected the argument that an "innocent third party creditor should not have to be concerned with the source of the fund that will be used to pay his claim."[56]

The District of Columbia Circuit and several state courts have reached similar conclusions. In *Pete v. United Mine Workers of America Welfare and Retirement Fund of 1950*, the District of Columbia Circuit said that the "[t]rustees are before the court in their fiduciary capacities and thus bear no personal liability for the shifted attorney's fees."[57] The highest courts of Maine and Missouri as well as intermediate courts in New York, Oregon, and Florida have held likewise.[58]

---

[53]*Id.*

[54]*Id.* at 898 (emphasis in original).

[55]*Id.* at 897 (emphases in original).

[56]*Id.* at 899.

[57]517 F.2d 1275, 1279, 1292-93 (D.C. Cir. 1975) (en banc).

[58]*In re Estate of Ricci*, 827 A.2d 817, 825-26 (Me. 2003) (clarifying that a personal representative of a deceased spouse is not personally liable for the plaintiff's attorney's fees in a former spouse's successful suit to enforce a support agreement); *Jesser v. Mayfair Hotel, Inc.*, 360 S.W.2d 652, (Mo. 1962) ("The judgment should have run against the four surviving trustees *not in their individual or personal capacity* but as trustees representing the voting trust estate since the allowance of attorneys' fees and expenses was proper as a charge or expense of the trust estate.") (emphasis added); *Skolnick v. Goldberg*, 737 N.Y.S.2d 601, 602 (N.Y. App. Div. 2002) ("Since defendant's decedent could only have brought and main-

**[12]** Biltmore's prosecution of the lawsuit was not tortious or otherwise unlawful. The costs award against Biltmore, acting as the creditors' committee trustee, was an ordinary cost, imposed on account of the statutory fee shifting provision in contract cases.[59] The district court did not impose the fees as a sanction or for misconduct or negligence.[60] Thus, Biltmore is entitled not to be liable for the money personally. The liability should, on remand, be imposed on Biltmore in its capacity as trustee of the Visitalk Creditors Trust.

## IV.  Conclusion

In appeal number 06-16417, we AFFIRM dismissal of the complaint because the insured versus insured exclusion bars coverage for claims brought as the assignee of the debtor in possession. In appeal number 07-16036, we REMAND the award of attorneys' fees for clarification that Biltmore is only liable in its capacity as representative of the trust. Costs in favor of appellees in appeal number 06-16417, and in favor of appellant in appeal number 07-16036.

---

tained the complained of action in her representative capacity, and not in her individual capacity, she cannot be held personally liable for any costs connected with the action."); *McNeely v. Hiatt*, 909 P.2d 191, 197 (Or. Ct. App. 1996) ("It is an entirely different matter affirmatively to order that the fees of another person be paid by someone who is, in effect, not a party to the lawsuit."); *cf. Taylor v. Richmond's New Approach Ass'n*, 351 So. 2d 1094, 1096 (Fla. Dist. Ct. App. 1977) (distinguishing Illinois land trusts from other trust forms, and holding that Illinois land trustees could be held personally liable for attorneys' fees, in contrast to trustees of ordinary trusts).

[59] Ariz. Rev. Stat. Ann. § 12-341.01(A) (2003).

[60] Ariz. Rev. Stat. Ann. § 12-341.01(C) (2003).