# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Yessenow v. Executive Risk Indemnity, Inc.*, 2011 IL App (1st) 102920

---

Appellate Court
Caption

JEFFREY YESSENOW AND VIJAY PATEL, Plaintiffs-Appellees, v. EXECUTIVE RISK INDEMNITY, INC., Defendant-Appellant.

District & No.

First District, Third Division
Docket No. 1–10–2920

Filed

June 30, 2011

Held

(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*)

In an action seeking a declaration that the directors and officers policy issued by defendant provided coverage for plaintiffs, who were directors of medical centers forced into bankruptcy by their creditors, in lawsuits alleging mismanagement and self-dealing, the trial court properly granted partial summary judgment for plaintiffs, since the policy's bankruptcy exclusion is conditioned on the commencement of a bankruptcy case, but section 541(c) of the Bankruptcy Code invalidates contract provisions that are conditioned on the insolvency or financial condition of the debtor or on the commencement of a bankruptcy case, and the bankruptcy trustee who sued plaintiffs was not an insured for purposes of the insured versus insured exclusion and the trustee was not asserting a claim on behalf of the bankrupt entity, but on behalf of the bankruptcy estate and for the creditors' benefit.

Decision Under
Review

Appeal from the Circuit Court of Cook County, No. 10–CH–02670; the Hon. Daniel A. Riley, Judge, presiding.

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Meckler, Bulger, Tilson, Marick & Pearson LLP, of Chicago (James H. Kallianis, Jr., and Gary L. Gassman, of counsel), for appellant. |
| | Patterson Law Firm, LLC, of Chicago (Thomas E. Patterson, Kristi L. Browne, Joseph W. Barber, and Christine Rosso, of counsel), for appellees. |
| Panel | PRESIDING JUSTICE QUINN delivered the judgment of the court, with opinion. |
| | Justices Murphy and Steele concurred in the judgment and opinion. |

## OPINION

¶ 1      Defendant, Executive Risk Indemnity, Inc. (Executive), appeals from an order of the circuit court of Cook County granting partial summary judgment in favor of plaintiffs, Jeffrey Yessenow and Vijay Patel, former directors of two bankrupt Indiana entities, holding that, pursuant to a directors and officers liability policy, Executive must defend plaintiffs in an underlying lawsuit filed by the bankruptcy trustee. On appeal, Executive contends that the trial court erred in finding (1) that the policy's bankruptcy exclusion was unenforceable; and (2) that the policy's "insured versus insured" exclusion was ambiguous and must be resolved in favor of the insured. For the reasons set forth below, we affirm.

¶ 2                          I. BACKGROUND

¶ 3      Plaintiffs are physicians and former directors and officers of iHealthcare, Inc. (iHealthcare), and Illiana Surgery and Medical Center, LLC (Illiana). Illiana was organized as an Indiana limited liability company in February 1999 and renamed Heartland Memorial Hospital, LLC (Heartland), in May 2006. Heartland operated several for-profit, physician-owned, healthcare practices in Indiana and Illinois. iHealthcare is an Indiana corporation formed in June 2002 and was the sole owner of the equity of Heartland, which was managed by a committee of iHealthcare's board of directors. In October 2005, Executive issued to plaintiffs, as directors of iHealthcare, a "Diversified Healthcare Organization Directors and Officers Liability Insurance Policy" (D&O policy), which covered the period of October 2, 2005 to October 2, 2006 with a runoff endorsement extending the reporting period to October 2, 2007.

¶ 4      In January 2007, Heartland was brought into involuntary bankruptcy by its creditors. In

March 2007, iHealthcare petitioned for chapter 11 (11 U.S.C. § 101 *et seq.* (2006)) relief, and in April 2007, the cases were consolidated. In February 2009, the court-appointed trustee for Heartland, David Abrams, filed two lawsuits in the hospital's bankruptcy proceeding against plaintiffs and several other former directors of iHealthcare. Three additional lawsuits were filed against plaintiffs, one by iHealthcare in its bankruptcy proceeding alleging mismanagement and self-dealing and two by other former directors of iHealthcare. Plaintiffs submitted timely notice of each of the five lawsuits to Executive seeking coverage under the D&O policy. In April 2009, Executive notified plaintiffs that it was denying coverage. In September 2009, Abrams filed an amended complaint and plaintiffs again demanded coverage from Executive. Over the next several months, plaintiffs received no response from Executive to several e-mail requests, and in January 2010, they filed a complaint naming Executive and the trustee, Abrams, as defendants, and seeking a declaration that the D&O policy provides coverage for the five underlying actions filed against them.

¶ 5 On March 11, 2010, plaintiffs filed a motion for partial summary judgment seeking a declaration that the D&O policy requires Executive to provide a defense in one of the underlying actions filed by the trustee in the Heartland bankruptcy, *Abrams I*, which alleged that plaintiffs mismanaged the corporation and breached their fiduciary duties. Executive filed a cross-motion for summary judgment seeking a finding that the D&O policy did not afford coverage for the *Abrams I* action, as well as the other four underlying actions on the grounds that coverage was precluded by two exclusions in the policy, the "insured versus insured exclusion" and the "bankruptcy exclusion."

¶ 6 The policy's insured versus insured exclusion provides as follows:

"This policy does not apply to:

* * *

(E) any Claim by or on behalf of, or in the name or right of, the Company or any Insured Person,[1] except that this EXCLUSION (E) will not apply to:

(1) any derivative action by a security holder of the Company on behalf of, or in the name or right of, the Company, if such action is brought and maintained independently of, and without the solicitation of, the Company or any Insured Person.

(2) any Claim in the form of a crossclaim, third party claim or other claim for contribution or indemnity by an Insured Person which is part of or results directly from a Claim which is not otherwise excluded by the terms of this Policy; or

(3) any Claim for an Employment Practices Wrongful Act."

¶ 7 Before the trial court, Executive asserted that Abrams, as bankruptcy trustee and manager of Heartland, is an "insured" for purposes of the D&O policy, and that iHealthcare is the

---

[1] The policy defines an "insured" as "the company and any Insured Person." An "Insured Person" is defined as "any past, present or future director, officer, or member manager of the Company."

-3-

company itself and, therefore, also an insured. As a result, Executive argued, coverage is precluded under the insured versus insured exclusion. Plaintiffs contended that Abrams is not a normal director or manager because as trustee, he has formed a separate entity that is acting on behalf of Heartland's creditors, subject to the supervision of the bankruptcy court and not on behalf of Heartland itself.

¶ 8 The trial court, citing *Biltmore Associates, LLC v. Twin City Fire Insurance Co.*, 572 F.3d 663 (9th Cir. 2009), found that the issue of whether a trustee or debtor in possession is an insured for the purposes of an insured versus insured exclusion is unsettled law and that "ambiguities and doubts in insurance policies are resolved in favor of the insured, especially those that appear in exclusionary clauses." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 121 (1992). The court found that Executive could have sidestepped any ambiguity by including trustees and debtors-in-possession in either the definition of the "insured" or the language of the insured versus insured exclusion. Because it did not write with such specificity, the court interpreted the policy in favor of the insured and held that neither Abrams nor iHealthcare is an insured under the policy and that the insured versus insured exclusion does not preclude coverage.

¶ 9 The D&O policy's bankruptcy exclusion states:

"(1) In the event that a bankruptcy or equivalent proceeding is commenced by or against the Company, no coverage will be available under the Policy for any Claim brought by or on behalf of:

(a) the bankruptcy estate or the Company in its capacity as a Debtor in Possession; or

(b) any trustee, examiner, receiver, liquidator, rehabilitator, conservator, or similar official appointed to take control of, supervise, manage or liquidate the Company, or any assignee of any such official (including, but not limited to, any committee or creditors or committee of equity security holders).

(2) For the purposes of this endorsement, the term Debtor in Possession means a debtor under Chapter 11 of the United States Bankruptcy Code unless a person that has qualified under Section 322 of Title 11 of the U.S. Code is serving as trustee of such debtor."

¶ 10 In their motion before the trial court, plaintiffs argued that the exclusion was unenforceable because it violates section 541(c) and section 365(e)(1) of the Bankruptcy Code (Code). 11 U.S.C. §§ 541(c), 365(e)(1) (2006). The trial court agreed with plaintiffs' first contention, noting that section 541(c)(1)(B) of the Code states in pertinent part that a debtor's property–in this case the D&O policy–"becomes property of the [bankruptcy] estate *** notwithstanding any provision in an agreement *** that is conditioned on the insolvency or financial condition of the debtor [or] on the commencement of a case under this title *** and that effects *** a forfeiture, modification, or termination of the debtor's interest in property." 11 U.S.C. § 541(c)(1)(B). The court acknowledged that under the plain language of the exclusion, coverage was barred for the *Abrams I* action but found that it was unenforceable under section 541(c) of the Code because its "sole purpose is to forfeit, modify

-4-

or terminate iHealthcare's D&O policy by rendering the policy useless." The court rejected Executive's argument that section 541(c) is not applicable because it only protects the rights of debtors and that plaintiffs are not debtors as defined in the Code, finding that coverage arises from the debtor companies' property interest in the policy and that interest is protected by section 541(c).[2]

¶ 11    Therefore, based on its findings that neither the bankruptcy exclusion nor the insured versus insured exclusion precluded coverage, the trial court granted plaintiff's motion for partial summary judgment and found that Executive is obligated under the D&O policy to defend the plaintiffs in the *Abrams I* action.[3] The trial court entered a final and appealable order to that effect on September 3, 2010, and Executive filed a timely notice of appeal on October 1, 2010.

¶ 12                                    II. ANALYSIS

¶ 13    Summary judgment is proper where the pleadings, depositions, and admissions on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2–1005(c) (West 2008). Where cross-motions for summary judgment are filed in an insurance coverage case, the parties acknowledge that no material questions of fact exist and only the issue of law regarding the construction of an insurance policy is present. *American Family Mutual Insurance Co. v. Fisher Development, Inc.*, 391 Ill. App. 3d 521, 525 (2009). We review the grant of summary judgment *de novo. Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). Additionally, we can affirm the trial court's ruling on any basis in the record. *Legion Insurance Co. v. Empire Fire & Marine Insurance Co.*, 354 Ill. App. 3d 699, 703 (2004).

¶ 14    Before addressing the substantive issues raised on appeal, we must first determine whether Illinois or Indiana law applies. In the absence of a choice-of-law provision in an agreement, the general choice-of-law rules of the forum state control. See *Diamond State Insurance Co. v. Chester-Jensen Co.*, 243 Ill. App. 3d 471, 485 (1993). It is undisputed that the D&O policy at issue in this litigation contains no choice-of-law provision; therefore, the general choice-of-law rules of the forum state, Illinois, control. Under Illinois choice-of-law rules, "insurance policy provisions are generally 'governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract.' " *Lapham-Hickey Steel Corp. v.*

[2]The trial court's order did not address plaintiffs' argument under section 365(e)(1) of the Bankruptcy Code.

[3]The trial court granted Executive's cross-claim for summary judgment as to two of the underlying actions but denied the motion as to the remaining actions, including *Abrams I*. That ruling is not at issue in this appeal.

*Protection Mutual Insurance Co.*, 166 Ill. 2d 520, 526-27 (1995) (quoting *Hofeld v. Nationwide Life Insurance Co.*, 59 Ill. 2d 522, 528 (1975)). These factors do not have equal significance and are to be weighed according to the issue involved. See *Liberty Mutual Fire Insurance Co. v. Woodfield Mall*, *L.L.C.*, 407 Ill. App. 3d 372, 379 (2010). In addition, in applying these factors consideration should be given to the justified expectations of the parties and to the predictability and uniformity of the result, as well as to ease in determination and application of the law to be applied. *Liberty Mutual*, 407 Ill. App. 3d at 379.

¶ 15 In applying the test enunciated in *Lapham-Hickey*, we find that Indiana law applies in interpreting the provisions of the D&O policy. The named insured, iHealthcare, is an Indiana corporation located in Munster, Indiana. The policy was delivered to iHealthcare in Indiana through an Indiana insurance broker. Further, Heartland is an Indiana limited liability company and the plaintiffs are residents of Indiana. Therefore, Indiana has the most significant contacts with the contract and the substantive law of that jurisdiction controls the interpretation of the D&O policy provisions. However, because this case also requires interpretation of the Bankruptcy Code, federal law will also apply. With this in mind, we turn to the two issues raised in this appeal, whether the trial court erred in finding that neither the bankruptcy exclusion nor the insured versus insured exclusion bars coverage under the D&O policy.

¶ 16 A. Bankruptcy Exclusion

¶ 17 Executive argues that under the plain language of the D&O policy's bankruptcy exclusion, plaintiffs are not entitled to coverage for the *Abrams I* action and that the trial court mistakenly deemed the exclusion unenforceable as a violation of section 541(c) of the Bankruptcy Code. Before addressing that finding, we first address the threshold issue raised by Executive as to whether plaintiffs, as nondebtors, have standing to challenge the validity of the bankruptcy exclusion under the Bankruptcy Code.

¶ 18 Section 541(c)(1) of the Code provides, in part, as follows:

"Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law–[.]" 11 U.S.C. § 541(c)(1) (2006).

¶ 19 The Code defines a " 'debtor' " as a "person or municipality concerning which a case under this title has been commenced." 11 U.S.C. § 101(13) (2006). Executive argues that because the *Abrams I* action does not arise from plaintiffs' own bankruptcy filing, they are not debtors under the Code and, therefore, should not be afforded the protections offered by the Code, such as invalidating the bankruptcy exclusion. Executive asserts that federal courts have found that other provisions of the Code, such as section 522(b), permitting exemptions (11 U.S.C. § 522(b) (2006)) and section 362, the automatic stay provision (11 U.S.C. § 362 (2006)), do not apply to nondebtors. See, *e.g.*, *In re Cathcart*, 203 B.R. 599, 604 (Bankr. E.D. Va. 1996) ("no provisions of the Bankruptcy Code provide standing for non-debtor third

parties to claim exemptions in property of the estate"); *Zurich Insurance Co. v. Raymark Industries, Inc.*, 213 Ill. App. 3d 591, 595 (1991) (holding that section 362(a) of the Code stays proceedings against debtor only, not codebtors). Similarly, Executive contends, plaintiffs are nondebtors and do not have standing to challenged the bankruptcy provision under section 541(c) of the Code. We disagree.

¶ 20     The D&O policy at issue in this case is an asset of the bankruptcy estate, and the trustee cannot obtain the possible benefits of indemnity for the insureds' wrongdoing without permitting the named insureds to access the defense costs under that policy. The trustee has acknowledged this in his response to plaintiffs' motion for a temporary restraining order, claiming that plaintiffs' right to coverage under the policy is clear. Although coverage inures to the benefit of plaintiffs, it arises from the D&O policy which has become a property interest of iHealthcare and Heartland, the debtors. Therefore, that property interest is protected by section 541(c) and because any benefit to the estate will be realized only if plaintiffs may seek coverage under it, they have standing to challenge the exclusion.

¶ 21     We now turn to the issue of whether the trial court erred in finding that the bankruptcy exclusion is unenforceable under section 541(c) of the Bankruptcy Code because it renders the policy useless. It is clear, as the trial court found, that the plain language of the exclusion, which bars coverage for "any claim brought by or on behalf of *** any trustee *** liquidator *** or similar official appointed to take control of, supervise, manage or liquidate the company once a bankruptcy proceeding has commenced," would preclude coverage for the adversary proceeding filed by Abrams against plaintiffs. Executive contends that the trial court erred in finding the exclusion rendered the policy "useless," because it does not bar coverage for all claims against plaintiffs but only those claims brought by certain parties, such as debtors in possession and trustees in the event that the company filed bankruptcy. Other claims, such as an employment discrimination suit against plaintiffs would still be covered by the policy, and therefore, Executive asserts, the trial court erred in deeming the exclusion unenforceable under section 541(c).

¶ 22     Further, Executive argues that several courts have upheld the application of similar exclusions to preclude coverage. For instance, in *Lexington Insurance Co. v. American Healthcare Providers*, 621 N.E.2d 332 (Ind. Ct. App. 1993), the directors and officers of an HMO were sued by a liquidator appointed by the Indiana Department of Insurance alleging that they had breached their fiduciary duties to the HMO by failing to take appropriate action to preserve and protect its assets after they knew or should have known of the HMO's deteriorating financial condition. *Lexington*, 621 N.E.2d at 334. The plaintiffs filed a complaint for declaratory judgment claiming that Lexington owed them a duty to defend them pursuant to a directors and officers liability policy issued by Lexington. *Lexington*, 621 N.E.2d at 335. The insurer denied coverage based on the policy's insolvency provision, which excluded from coverage the following:

> " 'Claims based upon, arising out of, due to or involving directly or indirectly the insolvency, receivership, bankruptcy, liquidation or financial inability to pay of any Insured, any Insurer or any other person, including Claims brought by any insurer *** or any Commissioner or Superintendent of Insurance.' " (Emphasis omitted.)

*Lexington*, 621 N.E.2d at 335.

¶ 23    The plaintiffs reached a settlement with the liquidator and Lexington then filed a motion for summary judgment to which plaintiffs responded and filed a cross-motion for summary judgment. *Lexington*, 621 N.E.2d at 335. After a hearing, the trial court denied both parties' motions and certified each denial for interlocutory appeal. *Lexington*, 621 N.E.2d at 335. The appellate court reversed the trial court, finding that the exclusion unambiguously applies to the lawsuits filed by the liquidator. *Lexington*, 621 N.E.2d at 335. The court stated that "as the policy broadly excludes claims involving the insolvency or liquidation of any person, it is illogical to read the exclusion as applying to claims against liquidators of unrelated entities." *Lexington*, 621 N.E.2d at 337. "Since acts which 'lead to' or 'cause' an insolvency or liquidation also 'involve' an insolvency or liquidation, giving those terms their plain and ordinary meanings, claims based on those acts would be excluded ***." *Lexington*, 621 N.E.2d at 337. The court also rejected the plaintiffs' argument that the exclusion rendered the policy illusory or void as a matter of public policy. *Lexington*, 621 N.E.2d at 339-40.

¶ 24    Similarly, in *Coregis Insurance Co. v. American Health Foundation, Inc.*, 241 F.3d 123 (2d Cir. 2001), several nonprofit companies that operate and manage nursing homes and their officers and directors filed a declaratory judgment action seeking indemnity coverage from their insurer in two lawsuits filed by a receiver appointed by the state, alleging that the insureds failed to repay loans allegedly obtained through fraudulent misrepresentations about the financial status of the companies. The insurer denied coverage pursuant to the policy's insolvency exclusion, which precluded coverage for any claim " '[a]rising out of, based upon or related to *** [t]he insolvency of the company named in the Declarations *** [or a] financial impairment of the company named in the Declarations.' " *Coregis*, 241 F.3d at 126. Plaintiffs argued that because the claims against them were based on alleged misrepresentations made before the companies became insolvent, they did not fall within the scope of the insolvency exclusion. *Coregis*, 241 F.3d at 126. The trial court agreed, granting plaintiffs' motion for summary judgment and denying defendant's motion. *Coregis*, 241 F.3d at 126. However, the appellate court reversed, finding that the "[l]awsuits are unquestionably 'connected to,' 'associated with,' and brought 'with reference to' the insolvency or financial impairment" of the insured companies and "thus plaintiffs' request for coverage *** is 'related to' such financial failure." *Coregis*, 241 F.3d at 129. Therefore, the court concluded that the insolvency provision of the policy clearly and unambiguously excluded coverage for the underlying lawsuit. *Coregis*, 241 F.3d at 131.

¶ 25    Executive contends that as in *Lexington* and *Coregis*, this court should find that the bankruptcy exclusion unambiguously excludes coverage to plaintiffs for the *Abrams I* lawsuit and that because the policy does not preclude coverage for all claims, the trial court erred in finding that the exclusion rendered the policy useless and unenforceable under section 541(c).

¶ 26    In response, plaintiffs assert that the cases relied upon by Executive, namely *Lexington* and *Coregis*, are inapposite because they involved the appointment of receivers under state statutes with language that is very different from the language in section 541(c). Plaintiffs note that according to its legislative history, section 541(c) invalidates contract provisions

"that are conditioned on the insolvency or financial condition of the debtor, [or] on the commencement of a bankruptcy case." 11 U.S.C. § 541(c) Historical and Revision Notes, Senate Report No. 95–989. Because the policy's bankruptcy exclusion states that it applies if the company goes bankrupt, it is "conditioned on the insolvency of the debtor," the appointment of a trustee, and the "commencement of a bankruptcy case" and, therefore, is precluded by the Bankruptcy Code, plaintiffs assert. We agree. As discussed above, coverage arises from a policy that has become a property interest of iHealthcare and Heartland, the debtors. That property interest is protected by section 541(c), which invalidates contract provisions "that are conditioned on the insolvency or financial condition of the debtor [or] on the commencement of a bankruptcy case." Here, because the bankruptcy exclusion is conditioned on the commencement of bankruptcy case, the trial court did not err in finding that the bankruptcy exclusion in this D&O policy is unenforceable under section 541(c).[4]

¶ 27                    D. Insured versus Insured Exclusion

¶ 28    Executive next argues that the trial court erred in granting partial summary judgment to plaintiffs on the grounds that the insured versus insured exclusion in the D&O policy was ambiguous and, therefore, must be resolved in favor of the insured. Executive first asserts that the exclusion is not ambiguous and that its plain language bars coverage for the *Abrams I* action, because any claim brought by Abrams in his postpetition role as trustee is one brought "by or on behalf of or in the name or right of the Company or an Insured Person" and, therefore, is excluded from coverage.

¶ 29    Alternatively, Executive contends that the trial court's basis for finding that the insured versus insured exclusion is "ambiguous" was its determination that the question of "whether a trustee or debtor-in-possession is an insured for the purposes of an 'Insured v. Insured' exclusion is unsettled law." The court concluded that because the question is unsettled, the provision itself is ambiguous and must be resolved in favor of the insured. Executive contends, however, that conflicting judicial opinions do not necessarily equate to ambiguity. See *In re Federal Press Co.*, 104 B.R. 56, 60 (Bankr. N.D. Ind. 1989) ("the mere fact that a controversy exists concerning an insurance policy and the parties to the contract assert opposing interpretations of the policy does not establish that ambiguity exists within the policy"). Although "[a] significant division between courts over the interpretation of identical language can itself be some evidence of ambiguity, [citation], *** Indiana has not gone so far as to suggest that any split of judicial authority proves the existence of an ambiguity that must be resolved in favor of the insured. (Such a rule would effectively delegate insurance coverage questions to the court most inclined to favor the insured.)" *Aearo Corp. v. American International Specialty Lines Insurance Co.*, 676 F. Supp. 2d 738, 744 (S.D. Ind. 2009). Therefore, Executive argues, the unsettled nature of the law alone,

---

[4]Because we conclude that the bankruptcy exclusion is unenforceable under section 541(c) of the Code, we need not consider the argument raised by appellees in the trial court that the exclusion is also unenforceable under section 365(e)(1) of the Code.

without consideration of the arguments on both sides, is not grounds for finding the provision is ambiguous.

¶ 30    Executive further contends that the case law supports a finding that the insured versus insured exclusion bars coverage for claims against an insured by either a bankruptcy trustee or a debtor in possession. For support, Executive relies on *Biltmore Associates, LLC v. Twin City Fire Insurance Co.*, 572 F.3d 663, 671 (9th Cir. 2009). In *Biltmore*, Visitalk, an Arizona corporation, purchased D&O policies naming it and its officers and directors as insureds. *Biltmore*, 572 F.3d at 665. Two years later, Visitalk filed a chapter 11 bankruptcy petition and, as " 'debtor and debtor in possession,' " sued its recently discharged officers and directors for breach of their fiduciary duties. *Biltmore*, 572 F.3d at 666. After the insurers denied coverage, Visitalk filed a chapter 11 reorganization plan that assigned its claims against the directors and officers to a trust, naming Biltmore as trustee. *Biltmore*, 572 F.3d at 667. Biltmore subsequently settled Visitalk's claims against four directors and officers for a confession of judgment of $175 million and an assignment of whatever claims the directors and officers had against the insured. *Biltmore*, 572 F.3d at 667. Biltmore, as trustee of the creditors' committee, then sued the insurance companies on the basis of those claims. *Biltmore*, 572 F.3d at 667. The district court dismissed the case for failure to state a claim on which relief could be granted, and Biltmore appealed.

¶ 31    The Ninth Circuit Court of Appeals affirmed the dismissal but on different grounds than the trial court, finding that the D&O policy's insured versus insured exclusion barred coverage. First, in determining whether an insured versus insured exclusion applies to bar coverage for a fiduciary liability, the court rejected the argument that when such claims are brought on behalf of the creditors by the creditor's trustee, they are not " 'brought or maintained on behalf of an Insured in any capacity.' " *Biltmore*, 572 F.3d at 669. The court also rejected the argument that Visitalk, as the debtor in possession, was not the same entity as Visitalk, the pre-bankruptcy corporation. The court noted that "[s]everal bankruptcy decisions around the country, including one in this circuit, treat a postbankruptcy entity as different from the debtor before it went into chapter 11 for purposes of the insured versus insured exclusion. Several others hold that they are the same entity for this purpose. Few cases, and no circuit court decisions, deal with the specific situation of a chapter 11 debtor in possession." *Biltmore*, 572 F.3d at 670-71.

¶ 32    The court then stated:

> "We conclude that for purposes of the insured versus insured exclusion, the prefiling company and the company as debtor in possession in chapter 11 are the same entity. The bankruptcy code defines a Chapter 11 debtor in possession as the debtor. The debtor, in turn, is defined as the 'person or municipality concerning which a case under this title has been commenced.' Bankruptcy cases can be filed only with respect to pre-bankruptcy persons. Thus[,] the debtor in possession is the debtor, and the debtor is the person, Visitalk, that filed for bankruptcy. Applying these statutory provisions literally, Visitalk, the debtor in possession, is the same person for bankruptcy purposes as Visitalk, the pre-bankruptcy corporation. There is no good reason to interpret the language other than literally in this context."

-10-

*Biltmore*, 572 F.3d at 671.

¶ 33    The court, therefore, found that the insured versus insured exclusion barred coverage and stated that "[t]he alternative position would create a perverse incentive for the principals of a failing business to bet the dwindling treasury on a lawsuit against themselves and a coverage action against their insurers, bailing the company out with the money from the D&O policy if they win and giving themselves covenants not to execute if they lose. That is among the kinds of moral hazard that the insured versus insured exclusion is intended to avoid." *Biltmore*, 572 F.3d at 674.

¶ 34    Relying on *Biltmore*, Executive argues that the suit filed by Abrams in his capacity as trustee for Heartland unambiguously falls within the scope of the insured versus insured exclusion and therefore, the trial court erred in granting plaintiffs' summary judgment motion on these grounds. However, because *Biltmore* is distinguishable from the instant case in some key respects, we find that it does not support Executive's argument. First, in this case, Abrams filed the lawsuits against plaintiffs in his capacity as a court-appointed trustee, not a debtor-in-possession. A court-appointed trustee, unlike a debtor-in-possession, is acting with the imprimatur of the court, reducing the fear of collusion, which, as the *Biltmore* court noted, is "among the kinds of moral hazard that the insured versus insured exclusion is intended to avoid." *Biltmore*, 572 F.3d at 674. Further, in *Biltmore*, there was actual evidence of collusion, as Visitalk, the debtor-in-possession, initially filed the lawsuit against the corporation's officers and directors and then consented to a judgment against itself before assigning the claims to the trustee. No such evidence of collusion is present in this case and, as noted above, would be unlikely given that the trustee is acting with the authority of the court. Therefore, in this case, unlike in *Biltmore*, where a court-appointed trustee is working on behalf of creditors and under the authority of the bankruptcy court, we find that the trustee and the debtor hospital are not the same entity for purposes of the insured versus insured exclusion.

¶ 35    Our conclusion is supported by several federal courts that have similarly held that because a bankruptcy trustee is not asserting claims by or on behalf of the bankrupt entity but, rather, on behalf of the estate and for the benefit of the creditors, the trustee is not a trustee of the entity, but rather, is a trustee of the bankruptcy estate. See, *e.g.*, *Unified Western Grocers, Inc. v. Twin City Fire Insurance Co.*, 457 F.3d 1106, 1116-17 (9th Cir. 2006) (holding that bankruptcy trustee of subsidiary is different entity than subsidiary itself); *In re Molten Metal Technology, Inc.*, 271 B.R. 711 (Bankr. D. Mass. 2002) (holding that while it was certainly true that trustee "stood in the shoes of the debtor" when prosecuting causes of action that arose in favor of debtor prepetition, this did not mean that trustee was the debtor, for purpose of the insured versus insured exclusion); *In re Buckeye Countrymark, Inc.*, 251 B.R. 835, 840-41 (Bankr. S.D. Ohio 2000) (holding that bankruptcy trustee is separate legal entity from debtor).

¶ 36    Further, although Executive did not cite, and this court did not find, any Indiana cases directly addressing this issue, we note that in *Lexington*, discussed above, the Indiana Court of Appeals, in addressing whether insurance policies issued to two HMOs excluded coverage for claims arising out of insolvency, stated that the Indiana Department of Insurance, which

was appointed as the liquidator of the HMOs, was "not an insured under the [insurance] policy." *Lexington*, 621 N.E.2d at 337. This is consistent with our recent holding in *McRaith v. BDO Seidman, LLP*, 391 Ill. App. 3d 565, 909 N.E.2d 310 (2009), which also addressed the role of a court-approved liquidator for an insurance company. In *McRaith*, the Director of the Illinois Department of Insurance as liquidator of insolvent third-party insurance companies sued BDO Seidman, an accounting firm, for negligence and breach of contract in auditing the companies. BDO filed a motion to dismiss, asserting that the owners, officers and directors of the insurance companies had engaged in fraudulent and willful misconduct, which was imputed to the insurance companies, and, in turn, to the liquidator. BDO contended that the liquidator was barred from bringing any claims against it because intentional tortfeasors cannot sue other alleged co-wrongdoers. The trial court initially denied BDO's motion on the issue of imputation, relying on the holding in *Holland v. Arthur Andersen & Co.*, 127 Ill. App. 3d 854 (1984), wherein this court found that the "adverse-interest exception" precluded imputation of fraudulent conduct to the company. Subsequently, on a motion to reconsider the denial of BDO's motion to dismiss, which was assigned to a different judge after the original judge retired, the trial court dismissed three counts of the complaint with prejudice, finding that the liquidator " 'is now standing in the shoes of [the owner] or the company since it's a sole owner.' " *McRaith*, 391 Ill. App. 3d at 575.

¶ 37 On appeal, this court noted that Illinois courts had yet to address the issue of imputation of conduct in the context of the liquidation of insolvent insurers, and looked for guidance to a Connecticut case, *Reider v. Arthur Andersen, LLP*, 784 A.2d 464 (Conn. Super. Ct. 2001), for support. In *Reider*, the insurance commissioner, as liquidator of an insolvent insurer, brought an action against an accounting firm to recover for misreporting the value of the insurer's account receivable payable by a corporation controlled by the insurer's sole shareholders. *Reider*, 784 A.2d at 466. The accounting firm moved to strike the complaint arguing, in part, that the liquidator could not prevail on its claims because they sought damages for harm allegedly suffered by the insurance company as a result of its own fraudulent conduct. *Reider*, 784 A.2d at 468. The court rejected that argument, noting that although the knowledge of the agent is generally imputed to the principal, "when a corporate officer or agent engages in fraudulent conduct for the distinctly private purpose of lining his own pockets at his corporation's expense, it is unlawful, as well as illogical, to impute the agent's guilty knowledge *** to his corporate principal." *Reider*, 784 A.2d at 470. The court concluded that fraud of the agents was fraud on the principal insurance company, not a fraud by it. "Because the [Insurance] Commissioner had the right and duty to take [the company] over and manage its affairs on behalf of the public if its insolvency was threatened, the company itself ha[d] an enforceable claim against any person or entity who unlawfully contributed materially to its insolvency by violating a legal duty to advise it, either directly or through the Commissioner, as to its true financial status." *Reider*, 784 A.2d at 475.

¶ 38 Applying the holding and reasoning in *Reider* to the facts before it, the *McRaith* court reversed the trial court and held that the guilty knowledge and conduct of the insurance companies' sole owners could not be imputed to the companies or their court-affirmed

liquidator. *McRaith*, 391 Ill. App. 3d at 592. The court found that its holding was supported by its decision in *Holland v. Arthur Andersen & Co.*, 127 Ill. App. 3d 854, 866 (1984), wherein the defendant accounting firm argued that the imputation doctrine was applicable to the trustee in bankruptcy. This court disagreed and held that although misconduct may have been knowingly committed by the principal, because there was no evidence that the misconduct on the part of the principal was done on the behalf of the principal, the misconduct of the agent could not be imputed to the principal. *Holland*, 127 Ill. App. 3d at 867. Therefore, this court held that recovery by the principal, and thus the bankruptcy trustee, against the independent auditors could not be precluded. *Holland*, 127 Ill. App. 3d at 868.

¶ 39    The *McRaith* court also found that our supreme court's decision in *Republic Life Insurance Co. v. Swigert*, 135 Ill. 150 (1890), supported its holding that the imputation doctrine cannot apply to the liquidator. *McRaith*, 391 Ill. App. 3d at 593. In *Swigert*, in a case filed by the state auditor seeking the appointment of a receiver for an insolvent insurance company, our supreme court described the powers of a court appointed receiver, in part, as follows: "so far as his powers are derived from a statute or from a lawful decree of court, and the powers do not involve rights which, at the time of his appointment, were vested in such owners, he is not merely their representative, but is the instrument of the law and the agent of the court which appointed him." *Swigert*, 135 Ill. at 177. Therefore, the court concluded, in pursuing the powers and rights granted to him by law, the trustee "is not circumscribed and limited by the right which was vested in and available to the owners." *Swigert*, 135 Ill. at 177.

¶ 40    Similarly, in this case, Abrams, as a court-appointed trustee, is an instrument of the law and an agent of the court and has rights and powers that are not similarly vested in Heartland or its owners. Like the court-approved liquidator in *McRaith* and the bankruptcy trustee in *Holland*, who could not be precluded from recovery under the imputation doctrine, Abrams is a distinct entity from the prefiling hospital who is working on behalf of the hospital's creditors, not on behalf of the hospital. As such, we conclude that coverage under the policy is not barred by the D&O policy's insured versus insured exclusion. Therefore, although we do so on different grounds, we find that the trial court did not err in granting plaintiffs' motion for partial summary judgment on the grounds that the insured versus insured exclusion precludes coverage.

¶ 41                                III. CONCLUSION
¶ 42    For the foregoing reasons, we affirm the trial court.
¶ 43    Affirmed.